# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
#### Nos.  7:08-CR-146-BR
#### 7:11-CV-182-BR

ERIC JEVONNE BENNETT,                )
                                     )
         Petitioner,                 )
                                     )
    v.                               )         O R D E R
                                     )
UNITED STATES OF AMERICA,            )
                                     )
         Respondent.                 )

This matter is before the court on the government's motion to dismiss petitioner's motion filed under 28 U.S.C. § 2255.  Petitioner filed a response in opposition to the government's motion and an amendment thereto.  Petitioner also has filed two motions for appointment of counsel.

On 6 April 2009, petitioner pled guilty, pursuant to a plea agreement, to possession of a firearm by a convicted felon.  On 14 July 2009, the court sentenced petitioner to a term of 360 months imprisonment.  Petitioner appealed his conviction and sentence.  The Court of Appeals for the Fourth Circuit affirmed in part and dismissed in part.  United States v. Bennett, No. 09-4650 (4th Cir. Aug. 27, 2010).  Petitioner filed the instant petition, with supporting documentation, on 29 August 2011.

The majority of petitioner's claims allege ineffective assistance of counsel.[1]  The applicable legal standard for an ineffective assistance claim is well established.  Under the

---

[1]Although petitioner waived his right to challenge his conviction under § 2255 except upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to him at the time of his plea, (DE # 28, ¶ 2(c)), the court accepts petitioner's contention that he was not aware of the grounds for the ineffectiveness of trial counsel and prosecutorial misconduct claims prior to his plea, (see Resp., DE # 63), and addresses those claims on the merits.  Clearly, petitioner's claims of ineffective assistance of appellate counsel are not barred by the waiver.

principles of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984),

> a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Under the second prong of *Strickland*'s test, there is a "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." For counsel's trial performance to be deficient, he must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "counsel's representation fell below an objective standard of reasonableness." To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Under *Strickland,* a reasonable probability is a "probability sufficient to undermine confidence in the outcome." Furthermore, and of importance here, in conducting the ineffectiveness inquiry, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant."

<u>Burch v. Corcoran</u>, 273 F.3d 577, 588 (4th Cir. 2001) (citations omitted), <u>cert. denied</u>, 122 S. Ct. 2311 (2002). In the guilty plea context, to demonstrate prejudice, petitioner must show that but for counsel's errors, he would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

Petitioner first claims that had it not been for trial counsel's supposed inaccurate advice about the sentence he would receive, he would not have pled guilty. (Pet., DE # 51, at 4-6.) Specifically, he claims that counsel informed him that if he pled guilty (1) no conduct outside that necessary to establish the elements of the offense would be used against him; (2) he would receive a sentence between 188 and 235 months; (3) the government would recommend the low end of the sentencing guideline range but if the undersigned did not accept that recommendation, then he would receive a sentence of no more than 235 months; and (4) the Cumberland County

and Sampson County District Attorneys would dismiss all pending state charges against him.

(Id. at 4-5.)

At the plea hearing, the court informed petitioner as follows:

> Now, the court will not be able to determine what your advisory guideline range is until after the presentence report has been prepared and both you and your lawyer and the government lawyer have had an opportunity to challenge the facts that are set out in that presentence report. That necessarily means that no one knows exactly today what your guideline range or advisory guideline range will be. Nevertheless, your lawyer, in preparing you for this hearing today, has told you where she or he has calculated your guideline range will probably fall. That's a necessary part of the duty that your lawyer provides for you. Nevertheless, if the advisory guideline range which your lawyer has calculated happens to differ from the final numbers determined by the court on the date of your sentencing, that would not give you any reason to go back and decide to plead not guilty and be tried by a jury. Rather, if the court approves your plea today, it will stand in spite of any variance in those numbers.

(Tr., DE # 33, at 7-8.) Petitioner engaged in the following colloquy with the court:

> Q. Did you also hear and understand what I had to say about the sentencing guidelines?
> A. Yes, sir.
> Q. I take it that [counsel] has told you where he's calculated your guideline range would probably fall. He's done that, hasn't he?
> A. Yes, sir.
> Q. You understand that in doing that, he was exercising his best professional judgment as your lawyer?
> A. Yes, sir.
> Q. And that if the numbers he has forecast happen to differ from the numbers finally determined by the court, you would still be bound by the terms of your plea entered today, if it's approved today?
> A. Yes, sir.
> Q. Do you have any questions you'd like to ask me about the sentencing guidelines?
> A. No, sir.
> Q. Has anybody threatened you or forced you in any way to come into court today to enter this plea of guilty?

3

A. No, sir.

(Id. at 12-13.)  The court then proceeded to inform petitioner of the maximum sentence he faced, which was life imprisonment.  (Id. at 14-15.)

The court also recognized that part of the plea agreement in which the government agreed to recommend to the court at sentencing the low end of the guideline range, but the court pointed out to petitioner that this part of the agreement is not binding on the court.  (Id. at 17.)  Petitioner acknowledged that the court had fairly and accurately summarized the terms and conditions of the plea agreement.  (Id.)  Finally, petitioner denied that anyone had told him "anything at all to get [him] to sign this agreement, other than what appears on the pages on the agreement itself." (Id.)

Petitioner is bound by these statements and cannot now claim that he did not know about the possibility of a sentence of imprisonment in excess of 235 months or that things were promised to him in return for his plea, outside or different from the terms set forth in the plea agreement.  See United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (rejecting as "palpably incredible and patently frivolous or false" allegations contained in § 2255 motion which contradict the defendant's testimony during his Rule 11 colloquy and sentencing hearing). Thus, petitioner's first claim must be dismissed.

In his second claim, petitioner asserts that trial counsel was ineffective because counsel misrepresented material facts and withheld discovery from petitioner to cover up the fact that he (counsel) had failed to investigate the case and utilize any pretrial process.  (Pet., DE # 51, at 7-9.)  Petitioner claims that counsel told him that all of the government's evidence points to guilt and that he could not win at trial.  (Id. at 7.)  Petitioner cites to three pieces of evidence, which

supposedly counsel withheld from him: (1) an examination of latent fingerprint impressions taken from the stolen van involved in the offense did not positively identify petitioner; (2) the victim did not identify petitioner in a photographic lineup; and, (3) the fact that no results of DNA testing of blood samples taken from the victim's residence and petitioner were received from the North Carolina State Bureau of Investigation ("SBI") or the prosecutor. (Id. at 8-9 & Exs. 3A, 3B, 4A, 5-7D(2), DE # 51-1.)

Even assuming that petitioner has accurately characterized trial counsel's conduct, petitioner has failed to show that if he had in fact possessed this evidence, counsel would have advised petitioner differently about pleading guilty or petitioner himself would have insisted on going to trial. The court thinks not. While the supposedly withheld evidence appears favorable to petitioner, it by no means proves his innocence. The government's evidence is summarized in the PSR (to which petitioner did not object) and includes a letter addressed to petitioner, which was seized from the stolen van involved in the offense. (PSR ¶¶ 3-7.) Additionally, the PSR noted (again without any objection from petitioner) that petitioner had provided a written statement of acceptance of responsibility (which is discussed further below). (Id. ¶ 7.) Petitioner was also facing a second count, that is, possession of a stolen firearm. Given the evidence against petitioner and his criminal history, pleading guilty to one count and hoping to receive a lesser sentence, rather than contesting two counts at trial, was certainly a logical trial strategy. There is simply no support for petitioner's contention that had he known of counsel's misrepresentation as to the evidence, he would have proceeded to trial. Because petitioner cannot show that trial counsel's alleged deficiency prejudiced him, the second claim will be dismissed.

In his third claim, petitioner states that counsel lied to petitioner about petitioner's ability to withdraw his guilty plea, thereby rendering ineffective assistance of counsel and his plea involuntary. (Pet., DE # 51, at 11-13.) According to petitioner, just prior to the beginning of his plea hearing, counsel told him that because petitioner had signed the plea agreement, he had to accept it, even though the court had not yet approved it. (Id. at 12-13.) Again, petitioner's representations are belied by the statements he made at the plea hearing itself.

At the plea hearing, the court advised petitioner that he had an absolute right to plead not guilty and that he was entitled to a trial by jury. (Tr., DE # 33, at 3.) The court also informed him that by pleading guilty, he was waiving those rights. (Id. at 4.) Petitioner stated that he fully understood the court's explanation of his rights and declined the court's invitation to ask questions. (Id. at 12.) The court asked him, "Knowing that you must waive or give up some of those rights before you will be allowed to enter a plea of guilty, are you absolutely sure this is what you want to do?" (Id.) Petitioner responded, "Yes, sir." (Id.) In addition, petitioner stated that he had plenty of time to discuss the case with counsel. (Id. at 11.) Petitioner remains bound by the statements he made at his plea hearing and cannot now claim his plea was involuntary based on counsel's allegedly lying to him.

In his fourth claim, petitioner contends that trial counsel was ineffective for failing to consult with petitioner about, and to file, a motion to suppress the firearms at issue. (Pet., DE # 51, at 14-16.) Because the serial numbers on the firearms at issue listed in the Duplin County Sheriff's Office investigative report and evidence list do not match the serial numbers for those firearms listed in the Bureau of Alcohol, Tobacco, Firearms, and Explosives' ("ATF") investigative report, petitioner claims that counsel should have filed a motion to suppress, which

would have resulted in the indictment against petitioner being dismissed. (Id. at 15-16.) Petitioner is correct that as to the four 12-gauge shotguns at issue, serial numbers for two of the firearms differ between the state and federal investigating entities' reports. (Compare Pet., Ex. 1B, DE # 51-1, with Pet., Exs. 3B, 3C & 4A, DE # 51-1.) However, petitioner is incorrect that counsel should have consulted with him and in fact filed a motion to suppress the firearms. Under these circumstances, where there is no contention that law enforcement illegally searched the suspect vehicle where the firearms were found, a motion to suppress is not the appropriate vehicle for challenging the issue. See English v. United States, No. 11-cv-146-JPG, 2012 WL 76142, at *3 (S.D. Ill. Jan. 9, 2012) ("A motion to suppress invokes the exclusionary rule in an attempt to prevent evidence obtained in an illegal search from being admitted against a defendant." (citations omitted)). Rather, vigorous cross-examination of the investigating agent at trial would have been appropriate. Because counsel was not deficient for failing to consult with petitioner about, and to file, a motion to suppress the firearms, petitioner's fourth claim is without merit.

Petitioner's fifth claim also alleges counsel's purported ineffectiveness for failing to consult with petitioner about, and to file, a motion to suppress. (Pet., DE # 51, at 18.) This claim, however, concerns a 10 September 2008 photographic lineup. (Id. at 18-20.) Petitioner claims that counsel should have moved to suppress the identification because it was "tainted." (Id.) Petitioner relies on a 26 June 2008 article published in a local newspaper informing the public that petitioner was being sought in connection with a break-in; the article contains a picture of petitioner. (Pet., Ex. 11A, DE # 51-1.) Petitioner claims that by virtue of the publication of this information, the subsequent photographic lineup was flawed– "anyone would

be able to pick [petitioner] out of a lineup." (Pet., DE # 51, at 20.) Even if that were true, however, the victim did <u>not</u> identify petitioner as the perpetrator in the photographic lineup. (Pet., Exs. 6A-6D, DE # 51-1.) Although there was some apparent miscommunication between state and federal agents about whether the victim had in fact identified petitioner, (<u>see</u> Pet., Ex. 1A, DE # 51-1 (ATF agent noting that state agent stated victim <u>had</u> identified petitioner in photographic lineup)), trial counsel had no reason to move to suppress evidence of the photographic identification when the report of the identification itself shows that the victim identified someone other than petitioner. Accordingly, counsel was not deficient in this regard, and this claim will be dismissed.

In his sixth claim, petitioner argues that counsel failed to timely file a motion pursuant Federal Rule of Criminal Procedure 16 to obtain and review the "results of [the] government's forensic evidence." (Pet., DE # 51, at 21.) In support of this claim, petitioner refers to exhibits which reference the blood samples taken from the victim's residence and from petitioner and reference the submission of the samples to the North Carolina State Bureau of Investigation ("SBI") for DNA testing. (<u>See</u> <u>id.</u> at 22 (citing Exs. 1A, 3A, 4A, 7A-7D(2).) Counsel <u>did</u> file a timely request for discovery and for disclosure of all exculpatory evidence pursuant to Rule 16. (<u>See</u> DE # 18.) That request included a request to disclose the nature, results, and reports of any scientific tests. (<u>Id.</u>) Just because the state authorities submitted the blood samples for testing does not mean that testing actually occurred, <u>see</u> <u>Arizona v. Youngblood</u>, 488 U.S. 51, 59 (1988) ("[T]he police do not have a constitutional duty to perform any particular tests."), or, if it did, that it exonerates petitioner. In the absence of some prejudice to petitioner, this claim must be dismissed.

8

In his seventh claim, petitioner contends that "defense counsel's failure to move for an extension of time to file any pre-trial motions . . . , when counsel had not contacted or consulted with defendant to obtain or listen to defendant's version of the facts, before the expiration of" the pretrial motion deadline constitutes ineffective assistance of counsel. (Pet., DE # 51, at 23.) Petitioner does not state what motions counsel should have obtained an extension of time for filing. Claiming that counsel should have obtained an extension of time to file unspecified pretrial motions is not sufficient to state a claim. See Floyd v. United States, Crim. No. 7:04-1125-HFF, 2008 WL 3925841, at *5 (D.S.C. Aug. 26, 2008) ("'Trial counsel is not per se ineffective merely because he failed to file a particular motion allowed under the rules of criminal procedure. . . . Simply filing a motion because it is permitted under the rules, without regard to its merits, is a waste of already overtaxed court resources and does a disservice to the defendant.'" (quoting United States v. Tart, No. 87-7331, 1989 WL 64120, at *2 (4th Cir. June 9, 1989) (alteration omitted))). Assuming that counsel was obligated to consult with petitioner prior to the expiration of the pretrial motion deadline, petitioner still must show that counsel had a meritorious pretrial motion to file. Petitioner cannot show that he suffered any prejudice as a result of counsel's failure to file a motion for extension of time to file a pretrial motion, and accordingly, this claim must be dismissed.

With his eighth claim, petitioner switches gears and challenges the prosecutor's conduct. Petitioner alleges that the government failed to disclose favorable evidence, specifically the results of DNA testing of the blood samples submitted to the SBI. (Pet., DE # 51, at 26-29.) In essence, petitioner attempts to state a claim pursuant to Brady v. Maryland, 373 U.S. 83 (1987). There, the Court held that "the suppression by the prosecution of evidence favorable to an

accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87.

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued.

Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Petitioner cannot satisfy all these components.

As discussed with petitioner's sixth claim, just because state authorities submitted blood samples to the SBI does not mean that any testing of the samples actually occurred. Also, even assuming that testing occurred, it did does not mean that the results are favorable to petitioner. See Banks v. United States, No. 5:08cv162, 2010 WL 3855065, at *7 (N.D. W. Va. July 21, 2010) (addressing a petitioner's Brady claim of the government's failure to request, or its concealment of the results of, DNA testing and stating, "Simply because a given test is performed does not necessarily mean it will exonerate him"). Furthermore, "the Government has no obligation under *Brady* to turn over evidence which does not actually exist but might be produced as a result of as-yet-unperformed testing." Id. Petitioner has not stated a claim under Brady, and therefore, the eighth claim will be dismissed.

With his ninth claim, petitioner asserts another Brady violation. He claims that the prosecutor withheld pictures shown to the victim shortly after the crime. (Pet., DE # 51, at 30-31.) Petitioner refers to an unidentified document which appears to be typewritten notes of an investigating officer. (See Pet., Ex. 10A, DE # 51-1.) The relevant entry on 18 June 2008 provides, "Sampson County brought pictures to show Sammy[, i.e., the victim,] of the possible suspect. Sammy said the picture that was shown of a black male was not the subject that he

saw." (Id.) The important fact, contained in this written discovery, is that the victim did not identify petitioner from photographs shown to him shortly after the crime. This information was known to petitioner and/or petitioner's counsel before petitioner pled guilty, along with the evidence that the victim had also failed to identify petitioner in a subsequent photographic lineup on 10 September 2008, discussed previously. (Pet., Ex. 6A-6D, DE # 51-1.) Thus, possessing the photographs themselves would not have influenced petitioner's decision to plead guilty or proceed to trial. In the absence of prejudice flowing from the non-disclosure of the photographs referenced in written discovery, petitioner's ninth claim fails.

In his tenth claim, petitioner, citing prosecutorial misconduct, states, "Someone unlawfully and feloniously forged the defendant's name to a document[,] said Acceptance Statement . . . ." (Pet., DE # 51, at 32.) That statement provides: "I possessed firearms on June 18, 2008. I am very sorry for my conduct and accept full responsibility for my actions." (Pet., Ex. 8, DE # 51-1.) It is dated 16 April 2009 and is signed "Eric J. Bennett."[2] (Id.) Assuming that someone did in fact forge petitioner's signature on this document, petitioner is not entitled to habeas corpus relief on this basis. A forged signature on a statement of acceptance of responsibility does not implicate the validity of petitioner's conviction or sentence. The forgery, if any, occurred <u>after</u> petitioner pled guilty. Thus, the forged statement was not used to convict petitioner and certainly did not impact his decision about whether to plead guilty or whether to go to trial. In terms of petitioner's sentence, the statement was beneficial to petitioner. It assisted with petitioner's obtaining a three-level reduction in the calculation of his offense level, and the court sentenced petitioner to the low end of the applicable guideline

---

[2]The court notes that the signature on the document is strikingly similar to the signatures on the plea agreement and the instant petition.

imprisonment range.  Petitioner's tenth claim is without merit, and it will be dismissed.

Petitioner's two remaining claims allege ineffective assistance of appellate counsel.

> In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his "counsel's representation fell below an objective standard of reasonableness" in light of the prevailing professional norms, *Strickland*, 466 U.S. at 688, 104 S. Ct. 2052, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S. Ct. 2052.  *See Smith v. Robbins*, 528 U.S. 259, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000) (holding that habeas applicant must demonstrate that "counsel was objectively unreasonable" in failing to file a merits brief addressing a nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal").

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (omission in original).

First, petitioner claims that appellate counsel should have raised a claim of ineffective assistance of trial counsel based on trial counsel's "admitted" failure to become familiar with the sentencing guidelines before advising petitioner of his potential sentence.  (Pet., DE # 51, at 33.) "Ineffective assistance claims are generally not cognizable on direct appeal, however, 'unless it conclusively appears from the record that defense counsel did not provide effective representation.'"  United States v. Benton, 523 F.3d 424, 435 (4th Cir. 2008) (citation omitted). The court feels certain that if appellate counsel had raised the claim, the Court of Appeals for the Fourth Circuit would not have found trial counsel's ineffectiveness conclusively appearing from the record.  Therefore, appellate counsel was not deficient in failing to raise the claim on appeal.

Finally, petitioner claims that appellate counsel was ineffective for failing to secure a complete transcript of petitioner's plea hearing.  (Pet., DE # 51, at 34.)  The transcript of that hearing was filed before appellate counsel was appointed to represent petitioner, (see DE # 33),

12

and as far as the court is aware, the transcript is complete.  Appellate counsel was not deficient for failing to request that the hearing be transcribed again (and in fact, the court would not have authorized such a request).

In sum, petitioner has not stated a claim for habeas corpus relief on any basis.  The government's motion is ALLOWED, and the § 2255 motion is DISMISSED.  Petitioner's motions for appointment of counsel are DENIED as moot.  The court finds that petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability is DENIED.

This 23 April 2012.


_____
W. Earl Britt
Senior U.S. District Judge